FOR PUBLICATION

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| IN RE DONALD HUGH NICHOLS; JANE ANN NICHOLS,<br><br>*Debtors*, | No. 20-60043<br><br>BAP No.<br>20-1032 |
| DONALD HUGH NICHOLS; JANE ANN NICHOLS,<br><br>*Appellants*,<br><br>v.<br><br>MARANA STOCKYARD & LIVESTOCK MARKET, INC.; THE PARSONS COMPANY; CLAY PARSONS; KAREN PARSONS; ARIZONA DEPARTMENT OF REVENUE; JILL H. FORD, Chapter 7 Trustee,<br><br>*Appellees*. | OPINION |

Appeal from the Ninth Circuit
Bankruptcy Appellate Panel
Taylor, Lafferty III, and Brand, Bankruptcy Judges,
Presiding

Argued and Submitted July 9, 2021
Portland, Oregon

Filed September 1, 2021

Before: Diarmuid F. O'Scannlain, Richard A. Paez, and
Mark J. Bennett, Circuit Judges.

Opinion by Judge O'Scannlain

## SUMMARY[*]

### Bankruptcy

The panel reversed the bankruptcy court's decision denying Chapter 13 debtors' motion to voluntarily dismiss their bankruptcy case pursuant to 11 U.S.C. § 1307(b), and remanded to the bankruptcy court for further proceedings.

Although § 1307(b) confers upon a Chapter 13 debtor the right to request dismissal "at any time," the bankruptcy court concluded that under *In re Rosson*, 545 F.3d 764 (9th Cir. 2008), there was an implied exception to § 1307(b) where the debtor had engaged in bad faith or abuse of the bankruptcy process. The bankruptcy court concluded that this exception applied, justifying denial of the motion to dismiss, and it then converted the case to a liquidation under Chapter 7.

The panel held that *Rosson* was effectively overruled by *Law v. Siegel*, 571 U.S. 415 (2014), which held that a bankruptcy court may not use its equitable powers under 11 U.S.C. § 105 to contravene express provisions of the Bankruptcy Code. The panel held that *Rosson* therefore is

---

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

no longer binding precedent. Considering the question anew, and agreeing with the Second and Sixth Circuits, the panel held that a bankruptcy court is prohibited from invoking equitable considerations to contravene § 1307(b)'s express language conferring upon Chapter 13 debtors an absolute right to dismiss their case.

## COUNSEL

German Yusufov (argued), Yusufov Law Firm PLLC, Tucson, Arizona, for Appellants.

D. Alexander Winkelman (argued) and Frederick J. Petersen, Mesch Clark Rothschild, Tucson, Arizona, for Appellees.

## OPINION

O'SCANNLAIN, Circuit Judge:

We must decide whether debtors in a Chapter 13 bankruptcy have the right to dismiss their case, regardless of the bankruptcy court's determination that they engaged in an abuse of the bankruptcy process.

### I

### A

Appellants Donald Hugh Nichols and his wife, Jane Ann Nichols (collectively, "the Nicholses"), filed a Chapter 13 bankruptcy petition seeking to restructure their debts. After filing the petition, the Nicholses were indicted on federal criminal charges for their alleged participation in a scheme

to defraud Appellee Marana Stockyard and Livestock Market, Inc. ("Marana").

To avoid disclosure of information that might compromise their position in the criminal proceedings, the Nicholses declined to complete any of the steps required by the Bankruptcy Code to advance their case. They refused, *inter alia*, to hold a meeting with creditors, *cf.* 11 U.S.C. § 341; to file outstanding tax returns, *cf. id.* § 1308; or to propose an appropriate repayment plan, *cf. id.* § 1322. Their bankruptcy case thus languished for months without resolution.

Marana, which had filed a claim in the Nicholses' bankruptcy case seeking to recover losses from the alleged fraud, moved pursuant to 11 U.S.C. § 1307(c) for the case to be converted to a liquidation under Chapter 7 of the Bankruptcy Code.[1] In response, the Nicholses requested a stay of the bankruptcy case during the pendency of the criminal proceedings.

The bankruptcy court denied the motion to stay. At the same time, the bankruptcy court determined that conversion

---

[1] Section 1307(c) provides, in relevant part:

> [O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause, including—
>
> (1) unreasonable delay by the debtor that is prejudicial to creditors;
>
> . . .

of the case to a Chapter 7 liquidation was justified "for cause" under § 1307(c) due to the Nicholses' delays, which the court deemed to be unwarranted. The bankruptcy court also determined that conversion to Chapter 7 would have been proper, in the alternative, under § 1307(e), insofar as the Nicholses had failed to file tax returns for several years.[2]

B

The Nicholses requested another opportunity to remain in Chapter 13, however. The bankruptcy court acceded to their request and postponed by 30 days the entry of an order converting the case to Chapter 7. The bankruptcy court required the Nicholses to file outstanding tax returns and to submit a confirmable repayment plan to the Chapter 13 trustee before expiration of the 30-day period.

The Nicholses did not comply with the bankruptcy court's requirements. Before the expiration of the 30-day period, the Nicholses moved to dismiss voluntarily their bankruptcy case pursuant to § 1307(b).[3]

---

[2] Section 1307(e) provides:

> Upon the failure of the debtor to file a tax return under section 1308, on request of a party in interest or the United States trustee and after notice and a hearing, the court shall dismiss a case or convert a case under this chapter to a case under chapter 7 of this title, whichever is in the best interest of the creditors and the estate.

[3] Section 1307(b) provides:

> On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of

C

Although § 1307(b) confers upon a Chapter 13 debtor the right to request dismissal of his case "at any time," the bankruptcy court denied the Nicholses' motion to dismiss. Relying upon our decision in *In re Rosson*, 545 F.3d 764 (9th Cir. 2008), the bankruptcy court understood there to be an implied exception to § 1307(b) where the debtor has engaged in bad faith or abuse of the bankruptcy process. The bankruptcy court concluded that the Nicholses had "used Chapter 13 to hide from creditors during the pendency of the criminal proceedings" and that "[s]uch conduct constitutes an abuse of the bankruptcy process, justifying denial of the . . . Motion to Dismiss." The bankruptcy court thereupon converted the case to a liquidation under Chapter 7.

The Nicholses timely appealed the bankruptcy court's order to the Ninth Circuit's Bankruptcy Appellate Panel ("BAP"). The BAP affirmed the bankruptcy court's order. The Nicholses then timely appealed the BAP's decision to this court.

II

The Nicholses now argue that the bankruptcy court erred by relying upon *Rosson*'s implied "bad faith or abuse of process" exception to § 1307(b) to deny their request for voluntary dismissal. According to the Nicholses, *Rosson* has been effectively overruled by the Supreme Court's subsequent decision in *Law v. Siegel*, 571 U.S. 415 (2014), which, they contend, must be understood to prohibit a

---

this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

bankruptcy court from invoking equitable considerations to contravene § 1307(b)'s express language conferring upon a Chapter 13 debtor an absolute right to dismiss his case. The narrow question before us is whether *Rosson* has been implicitly abrogated by *Law*.

### A

#### 1

*Rosson* concerned a Chapter 13 debtor who was ordered by the bankruptcy court to deposit the proceeds of an expected arbitration award with the Chapter 13 trustee. 545 F.3d at 768. When the bankruptcy court was informed that the debtor had received the anticipated payment, but had not deposited it as instructed, the bankruptcy court determined *sua sponte* to convert the case to Chapter 7. *Id.* Before the conversion order could be entered, however, the debtor moved to dismiss under § 1307(b). *Id.* The bankruptcy court denied the motion to dismiss and converted the case, stating that it would be a "gross miscarriage of justice" to allow the debtor to "abscond" with assets of the estate. *Id.* at 769. The debtor appealed to the district court, which affirmed. *Id.*

#### 2

On subsequent appeal to this court in *Rosson*, we acknowledged the existence of a circuit split regarding a debtor's right to dismiss under § 1307(b) while a motion to convert under § 1307(c) remains pending. *Id.* at 771–72 (comparing *In re Barbieri*, 199 F.3d 616 (2d Cir. 1999); with *In re Molitor*, 76 F.3d 218 (8th Cir. 1996)). We further recognized that the Ninth Circuit's BAP had previously concluded that § 1307(b) confers upon a Chapter 13 debtor an absolute right to voluntary dismissal of his case. *Id.*

at 772 (discussing *In re Croston*, 313 B.R. 447 (9th Cir. BAP 2004); and *In re Beatty*, 162 B.R. 853 (9th Cir. BAP 1994)). We determined, however, that the BAP's interpretation of § 1307(b) was no longer tenable after the Supreme Court's decision in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), which concerned the scope of a debtor's right to convert from Chapter 7 to Chapter 13 pursuant to 11 U.S.C. § 706(a).[4]  *Id.*  We understood *Marrama* to stand for the broad proposition that "even otherwise unqualified rights in the debtor are subject to limitation by the bankruptcy court's power under § 105(a) to police bad faith and abuse of process." *Id.* at 773 n.12.

Based on such interpretation of *Marrama*, we held that "the debtor's right of voluntary dismissal under § 1307(b) is not absolute, but is qualified by the authority of a bankruptcy court to deny dismissal on grounds of bad-faith conduct or to prevent an abuse of process." *Id.* at 774 (quotation marks and citation omitted).  Accordingly, we affirmed the bankruptcy court's order denying the debtor's motion to dismiss and converting the case to Chapter 7 because of the debtor's bad faith conduct. *Id.* at 774–75.

---

[4] Section 706(a) provides:

> The debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable.

B

1

*Law*, which was decided six years later, concerned a Chapter 7 debtor who perpetrated a fraud on the bankruptcy court by falsely reporting that a lien existed on his primary residence. 571 U.S. at 418–19. The trustee later determined that the alleged lien was a sham filed by the debtor to protect his interest in the home. *Id.* at 419. Accordingly, the trustee initiated an adversary proceeding to have the lien removed, and, after he prevailed, he sought to have his attorney's fees paid from the debtor's exempt property. *Id.* at 419–20.

Despite 11 U.S.C. § 522(k)'s express prohibition on the use of a debtor's exempt property to cover expenses associated with administering the estate, the bankruptcy court granted the trustee's request.[5] *Id.* at 420. On appeal, the BAP affirmed the order as a permissible exercise of the bankruptcy court's equitable powers. *Id.* Upon subsequent appeal to this court, we also affirmed. *Id.* In an unpublished memorandum disposition, we concluded that the surcharge was proper because it was "calculated to compensate the estate for the actual monetary costs imposed by the debtor's misconduct, and was warranted to protect the integrity of the bankruptcy process." *Id.* (quoting *In re Law*, 435 F. App'x. 697, 698 (9th Cir. 2011)).

2

The Supreme Court reversed. In so doing, the Court made clear that a bankruptcy court may not use its equitable

---

[5] Section 522(k) provides, in relevant part: "Property that the debtor exempts under this section is not liable for payment of any administrative expense . . . ."

powers under § 105(a) to contravene express provisions of the Bankruptcy Code. 571 U.S. at 422–23. On behalf of a unanimous Court, Justice Scalia wrote that § 105(a) does not "allow the bankruptcy court to override explicit mandates of other sections of the Bankruptcy Code," including § 522(k)'s express prohibition on charging a debtor's exempt property to pay the trustee's administrative expenses. *Id.* at 421 (quoting 2 Collier on Bankruptcy ¶ 105.01[2] (16th ed. 2013)).

In doing so, the Supreme Court firmly rejected the argument—advanced by the Solicitor General in an amicus brief—that *Marrama* must be understood to establish that a bankruptcy court's § 105(a) powers to punish bad faith conduct implicitly qualify language contained elsewhere in the Bankruptcy Code. *Id.* at 425–26. On the contrary, *Law* concluded that "*Marrama* most certainly did not endorse, even in dictum, the view that equitable considerations permit a bankruptcy court to contravene express provisions of the Code." *Id.* at 426.

C

1

Although we are typically bound by the prior decision of another three-judge panel, we may depart from such precedent if a subsequent Supreme Court opinion "undercut[s] the theory or reasoning underlying the prior circuit precedent in such a way that the cases are clearly irreconcilable." *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003) (en banc). Here, we have no doubt that *Law* undercuts the reasoning of *Rosson*.

The holding of *Rosson* cannot stand absent the premise, ostensibly articulated in *Marrama*, that a bankruptcy court's

equitable powers under § 105(a) can limit express language contained elsewhere in the Bankruptcy Code. *See* 545 F.3d at 773 n.12. *Law*, however, clearly rejected such reasoning. *See* 571 U.S. at 426. In fact, *Law* explicitly rejected the sweeping interpretation of *Marrama* that we embraced in *Rosson*. *See id*. *Rosson* and *Law* are thus irreconcilable, such that *Rosson* has been effectively overruled.

Marana argues, however, that *Rosson* is consistent with *Law* because *Rosson* did not limit the Chapter 13 debtor's right to dismiss based on § 105(a), but rather based on a "holistic interpretation" of § 1307. According to Marana, *Rosson* stands for the proposition that, when faced with a bad-faith debtor's motion for voluntary dismissal under § 1307(b), a bankruptcy court may nevertheless heed its competing statutory mandate under § 1307(c) to convert the case to Chapter 7 to promote the best interest of creditors.

Moreover, Marana contends that *Law*'s treatment of *Marrama* does not undermine *Rosson*. Marana argues that *Rosson* should be understood to rely on *Marrama* not for the sweeping proposition that express provisions of the Bankruptcy Code are limited by the bankruptcy court's § 105(a) powers to punish bad faith, but rather for the far narrower principle that a debtor's bad faith is a "cause" justifying conversion to Chapter 7 under § 1307(c). Because, on Marana's view, *Law* rejected only the broad reading of *Marrama*, but otherwise left that precedent intact, Marana argues that *Rosson* remains similarly undisturbed.

Marana's arguments fail to persuade, however, because they mischaracterize the reasoning that we actually employed in *Rosson*. We did not rely on § 1307(c), nor did we discern in such statutory subsection any import for interpreting the mandate of § 1307(b). Rather, we primarily relied on the premise that *Marrama* had established "the

important point" that "even otherwise unqualified rights in the debtor are subject to limitation by the bankruptcy court's power under § 105(a) to police bad faith and abuse of process." 545 F.3d at 773 n.12.

Our expansive reading of *Marrama* was a defensible one at the time. Indeed, in *Law*, the Solicitor General advanced the very same reading of *Marrama* that we adopted in *Rosson*. *See, e.g.*, Brief for the United States at 25, *Law v. Siegel*, 571 U.S. 415 (2014) (No. 12-5196) (citing *Marrama* for the principle that § 105(a) empowers a bankruptcy court to disregard the express language of § 522(k) in order to punish fraud, misrepresentation, or other misconduct by the debtor). We must recognize, however, that such a position was unanimously and unambiguously rejected in *Law*.

2

Consequently, we now hold that *Rosson* has been effectively overruled by *Law* and is no longer binding precedent in this Circuit. Ever since our en banc opinion in *Miller v. Gammie*, 335 F.3d 889 (9th Cir. 2003), in which we clarified the standard in this Circuit for departure from a prior three-judge panel's decision based on intervening Supreme Court precedent, we have not hesitated to overrule our own precedents when their underlying reasoning could not be squared with the Supreme Court's more recent pronouncements.[6] We follow the same course here.

---

[6] *See, e.g.*, *Langere v. Verizon Wireless Servs., LLC*, 983 F.3d 1115, 1122 (9th Cir. 2020); *United States v. Baldon*, 956 F.3d 1115, 1121 (9th Cir. 2020); *Dorman v. Charles Schwab Corp.*, 934 F.3d 1107, 1112 (9th Cir. 2019); *Murray v. Mayo Clinic*, 934 F.3d 1101, 1105 (9th Cir. 2019); *United States v. Valencia-Mendoza*, 912 F.3d 1215, 1222 (9th Cir.

III

Because we are no longer bound by *Rosson*, we must consider anew whether a Chapter 13 debtor's right to voluntary dismissal of his case under § 1307(b) admits of an exception in the event of the debtor's bad faith or abuse of process.  If not, the Nicholses were entitled to dismiss their case, regardless of the bankruptcy court's determination that conversion to Chapter 7 was warranted.

A

1

On this point, section 1307(b)'s text is unambiguous.  The statute provides, in relevant part: "On request of the debtor at any time . . . the court shall dismiss a case under this chapter."  The term "shall" "normally creates an obligation impervious to judicial discretion." *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35 (1998); *see also Barbieri*, 199 F.3d at 619 ("The term 'shall,' as the Supreme Court has reminded us, generally is mandatory and leaves no room for the exercise of discretion by the trial court.").  Section 1307(b)'s text plainly requires the bankruptcy court to dismiss the case upon the debtor's request.  There is no textual indication that the bankruptcy court has any discretion whatsoever.

Although our sister circuits have disagreed with respect to the existence of a "bad faith" exception to a debtor's right to dismiss under § 1307(b), there is no dispute that the statute's text, by its own terms, confers an absolute right to

---

2019); *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013); *Phelps v. Alameida*, 569 F.3d 1120, 1133 (9th Cir. 2009).

dismiss.  For example, the Fifth Circuit, which concluded, similarly to our holding in *Rosson*, that a debtor's right to dismiss is subject to an implied exception in the event of the debtor's bad faith conduct, nonetheless confirmed that "the plain language of . . . § 1307(b) can be read to confer an absolute right to dismiss."  *In re Jacobsen*, 609 F.3d 647, 649 (5th Cir. 2010).

Indeed, the Fifth and Eighth Circuits' view—that the debtor's right under § 1307(b) is subject to an implied exception—is grounded, not on an alternative reading of the statutory text, but rather on the same, now-discredited theory of equitable powers that we had previously embraced in *Rosson*.  *See Jacobsen*, 609 F.3d at 661 ("Proceeding from the propositions in *Marrama* that an apparently unqualified right is subject to an exception for bad faith and that bad faith justifies a bankruptcy court's exercise of its powers under § 105(a), we conclude that § 1307(b) is subject to a similar exception . . . ."); *In re Molitor*, 76 F.3d 218, 220 (8th Cir. 1996) (relying on the "broad purpose" of the Bankruptcy Code to arrive at an interpretation that protects bankruptcy courts from "a myriad of potential abuses").

As we have already discussed, the Supreme Court's decision in *Law* clearly rejected such reasoning.  And, ever since *Law* was decided, no other Circuit has taken the position that there is an implied equitable exception to § 1307(b)'s right to dismiss.  *Cf. Smith v. U.S. Bank N.A.*, 999 F.3d 452, 456 (6th Cir. 2021) ("The command of 1307(b) is no mere procedural nicety, which is likely why no circuit court has accepted [the implied bad faith exception] argument since *Law* . . . .").  Accordingly, for the same reason that we dispensed with *Rosson*, we must also reject the approach previously adopted by the Fifth and Eighth Circuits, and instead hew to the "absolute right" approach

articulated by the Second Circuit in *Barbieri* and followed, most recently, by the Sixth Circuit in *Smith*.

2

Furthermore, the statutory text does not provide any support for the view that any other subsection in § 1307, such as § 1307(c), limits the debtor's right to dismiss under § 1307(b). Had it wished to provide for such an exception, Congress easily could have indicated the existence of one expressly. Indeed, § 1307(b) *does* contain a single *express* exception to the debtor's right to dismiss, which bars dismissal where the debtor has *already* exercised his right to convert the case to Chapter 13 from Chapters 7, 11, or 12. That Congress codified an express exception to § 1307(b)'s right to dismiss demonstrates that Congress considered the issue of exceptions and chose not to prescribe additional ones. *See United States v. Johnson*, 529 U.S. 53, 58 (2000) ("The proper inference . . . is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth.").

Marana argues that an "absolute right" reading of § 1307(b) would effectively render § 1307(c) a nullity by depriving the bankruptcy court of discretion to convert a case to Chapter 7 for cause. But "that is no more significant than the fact that an order granting a creditor's motion to convert under § 1307(c) would foreclose dismissal under § 1307(b)." *Barbieri*, 199 F.3d at 620. "In the event of competing motions filed under subsections (b) and (c), one subsection will inevitably prevail at the expense of the other." *Id.* (brackets omitted) (quoting *In re Patton*, 209 B.R. 98, 100 (Bankr. E.D. Tenn. 1997)). "Accordingly, the assertion that an absolute right under § 1307(b) would nullify § 1307(c) 'carries no weight since either party could

make the same argument.'" *Id.* (quoting *Patton*, 209 B.R. at 104).

Far from conflicting with other sections of the Bankruptcy Code, the "absolute right" reading of § 1307(b) is entirely consistent with the text and policy of § 303(a), which is designed to ensure that Chapter 13 remains a "wholly voluntary alternative to Chapter 7." *Smith*, 999 F.3d at 455 (quoting *Harris v. Viegelahn*, 575 U.S. 510, 514 (2015)); *see also Barbieri*, 199 F.3d at 620 (reasoning that the reading of § 1307(b) as conferring an absolute right to dismiss best reflects "the intention of Congress to create an entirely voluntary chapter of the Bankruptcy Code").

B

We conclude that § 1307(b)'s text confers upon the debtor an absolute right to dismiss a Chapter 13 bankruptcy case, subject to the single exception noted expressly in the statute itself. Consequently, the bankruptcy court here erred in denying the Nicholses' motion to dismiss based solely on its finding of abuse of the bankruptcy process.

We are confident that the Bankruptcy Code provides ample alternative tools for bankruptcy courts to address debtor misconduct. Even if such tools were lacking, however, it would be up to Congress to remedy the omission by way of appropriate legislation. We must adhere to the statute's clear mandate, regardless of practical difficulties that may ensue.

IV

Accordingly, we **REVERSE** the decision of the bankruptcy court, and we **REMAND** this matter to the

bankruptcy court for further proceedings in accord with this opinion.[7]

**REVERSED and REMANDED.**

---

[7] Appellants' motion to strike portions of the Supplemental Excerpts of Record is denied as moot as our opinion does not rely on the contested portions of the record. Appellants' Mot. to Strike from Excerpts of Record Documents, *Nichols v. Marana Stockyard and Livestock Mkt.*, No. 20-60043 (9th Cir. Jan. 4, 2021), ECF No. 27.